UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:15-CR-41-GFVT-HAI |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| BOBBY JOE WAGERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 89), the Court considers reported violations of supervised release conditions by Defendant Bobby Joe Wagers.

Judge Van Tatenhove entered a judgment against Defendant in September 2016 after he pleaded guilty to two counts of possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). D.E. 57. He was sentenced to 72 months of imprisonment on each count (served concurrently), to be followed by three years of supervised release. *Id.* Defendant was first released on October 28, 2020.

On December 1, 2020, the United States Probation Office ("USPO") submitted the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report,

> On November 25, 2020, the defendant submitted a urine sample that was sent to Alere Toxicology Services for testing. The sample appeared positive for methamphetamine, via instant testing device. The defendant denied the use of methamphetamine.

1

On December 1, 2020, a Drug Test Report was received from Alere Toxicology Services, indicating positive test results for methamphetamine.

The Report charges in Violation #1 a violation of the condition that prohibits, among other things possession or use of any controlled substance except as prescribed by a physician. This is a Grade C violation.

Violation #2 charges a violation of the condition that Defendant not commit another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #3 is a Grade B violation because Defendant's use and possession of methamphetamine, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

The Court conducted an initial appearance pursuant to Rule 32.1 on January 6, 2021, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 92. At the initial appearance, the United States moved for interim detention; Defendant did not argue for release. *Id.* Based on the heavy § 3143(a) defense burden, the Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on January 14, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 93. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations; he acknowledged he had used methamphetamine prior to submitting the urine sample. *Id.* Because Defendant admitted the factual basis for the violations, the government established both violations under the standard of 18 U.S.C. § 3583(e).

2

## I.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to two counts of being a felon in possession of a firearm, 18 U.S.C. § 922(g), a Class C felony. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation for Violation #1 and Grade B violation for Violation #2. Given Defendant's Criminal History Category of VI (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter 7, is 21 to 27 months. On account of the two-year statutory cap, Defendant's effective Guidelines Range is 21 to 24 months.

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Under 18 U.S.C. § 3583(h), the maximum term of supervised release that can be re-imposed is not more than three years, less any term of imprisonment imposed upon revocation.

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

## II.

At the final hearing, the government recommended revocation with a below-Guidelines sentence of eighteen months.  Revocation and a significant sentence were necessary, the government argued, due to Defendant's criminal history (he has criminal history category VI) and how quickly he used drugs after his release.  The government noted that, although Defendant was recommended for residential drug addiction treatment in prison, he did not complete the program.  Thus, the government recommended drug treatment upon release.

The defense requested that Defendant be sent to inpatient treatment and a halfway house instead of revocation.  The defense stressed Defendant's difficult childhood.  He was thrown out of the back of a pickup truck at five years old.  His father was murdered, and Defendant has little if any family support.  He has a lifetime of drug and alcohol addiction.  He is so prone to drug use, he only lasted a month out of jail.  Defendant did not complete RDAP in prison, but he needs intensive help, which he has not yet received.  According to the defense, he would have done better upon release if he had any financial support.  Thus, placing him in a halfway house following treatment would allow him to obtain his driver's license and reestablish social security disability payments—two tasks he was pursuing when arrested.  The defense argued in the alternative that if Defendant's release is to be revoked, he should be given twelve months and a day of incarceration, and treatment should be part of his sentence.

Defendant addressed the Court.  He affirmed that he is attempting to obtain a driver's license and has an appointment for SSI benefits.  He explained that he used meth because he "ran into a woman smoking meth."  Before that encounter, he had his "mind right," and he has since gotten his "mind right" again.  He said all he needs is probation, although he "might need a little

4

help at the drug place because I broke the law."

## III.

The Court has evaluated the entire record, including the Supervised Release Violation Report and accompanying documents, the argument presented at the final revocation hearing, and the sentencing materials from the underlying Judgment. The Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). Here, Defendant violated his conditions by using meth less than a month after his release. His initial denial of the meth use is also a significant breach of trust.

The nature and circumstances of Defendant's underlying conviction are very troubling, particularly his violent behavior and his tendency to go armed while intoxicated. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon

the original offense rather than the violations of supervised release). According to the PSR, Defendant's neighbors reported him in October 2012 for "shooting a shotgun outside of his residence and making threats." He was not arrested at that time because the shotgun was antique. But he was arrested later, in November 2012, when found intoxicated in a church parking lot. He had a loaded handgun and marijuana in his pocket. He was arrested again while intoxicated in July 2014 and was again found in possession of a handgun and marijuana.

Regarding Defendant's history and characteristics, he poses a clear risk of additional criminal conduct. Defendant has a 43-year history of committing crimes except (usually) when he is incarcerated. He poses a great risk of returning to criminal (and violent) behavior, especially when he uses meth. His history now includes that he used meth less than a month after his release. Further, each instance of drug use is an additional federal felony.

Another factor concerns the need for treatment. The parties agreed that Defendant needs treatment. But treatment is not an adequate substitute for revocation in this circumstance. Defendant denied his meth use to his probation officer. And, at the hearing, he blamed his meth use on another person. Defendant also did not complete RDAP in prison. He does not appear sincerely committed to overcoming his addictions. Nevertheless, he can benefit from treatment, and his existing conditions (which include participation in drug abuse and/or mental health treatment at the direction of the probation officer) are adequate.

The factors of deterring criminal conduct and protecting the public weigh heavily in this case. Defendant's drug abuse raises the specter of additional criminal conduct. This warrants a significant penalty, in addition to more time under the watchful eye of the USPO.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities.

This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration sentence eighteen months. This is below the Guidelines Range of 21 to 24 months. When varying from the Range, the Court must provide an adequate explanation and '"consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."' *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state '"the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]"' *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, both parties were comfortable with a below-Guidelines sentence. Defendant's Range, driven by his criminal history score, overstates the severity of his violation conduct. Although his swift return to drug use is serious, this is Defendant's first violation and he ultimately accepted responsibility by stipulating to the violations.

Subtracting this eighteen-month recommended sentence from the three years of additional supervision available under 18 U.S.C. § 3583(h) yields a remaining maximum of eighteen months. The undersigned recommends reimposing supervision for eighteen months to protect the public from Defendant's tendencies to become intoxicated and commit crimes. Defendant is warned he almost certainly will not receive as lenient a sentence if he violates again.

**IV.**

Based on the foregoing, the Court **RECOMMENDS:**

(1)    That, upon his stipulation, Defendant be found guilty of Violations #1 and #2.

(2)    Revocation with a term of imprisonment of eighteen months, to be followed by eighteen months of supervised release under the same conditions previously

imposed (D.E. 57).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 19th day of January, 2021.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge