UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:15-CR-41-GFVT-HAI |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| BOBBY JOE WAGERS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 114), the Court considers reported violations of supervised release conditions by Defendant Bobby Joe Wagers. This is his second revocation.

**I.**

Judge Van Tatenhove entered a judgment against Defendant in September 2016 after he pleaded guilty to two counts of possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). D.E. 57. He was sentenced to 72 months of imprisonment on each count (served concurrently), to be followed by three years of supervised release. *Id.* The record contains a transcript of his sentencing. D.E. 68. Defendant was first released on October 28, 2020.

On December 1, 2020, the United States Probation Office ("USPO") reported that Defendant submitted a urine sample that tested positive for methamphetamine. Defendant stipulated to illegal controlled-substance use and committing the crime of methamphetamine

1

possession. D.E. 96. His release was revoked, and he was sentenced to eighteen months' incarceration, followed by eighteen months of supervised release. D.E. 99, 100. Aggravating facts at the time included that Defendant had only been on release for a month prior to smoking meth and that he initially denied his meth use to the probation officer. Defendant allocated before Judge Van Tatenhove, and a transcript is filed in the record. D.E. 107. The penalty was upheld on appeal. D.E. 112. Defendant was released again on April 14, 2022. On April 25, 2022, he was referred to Bouncing Back Counseling for outpatient substance abuse and mental health counseling.

## II.

On December 6, 2022, the USPO submitted the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report,

> On December 2, 2022, this officer made a community contact with Wagers. He was asked to produce a urine specimen for drug testing purposes, and prior to providing a specimen, he admitted to smoking marijuana the previous day. Wagers denied any other drug use. Wagers subsequently produced a urine specimen which tested positive for the presence of methamphetamine and marijuana, via instant testing device. When confronted with the instant test results, Wagers admitted to also smoking methamphetamine the previous day. Wagers signed a Positive Drug Test Admission Report (Prob 4) in which he admitted to the aforementioned drug use.

The Report charges in Violation #1 a violation of the condition that prohibits "any unlawful use of a controlled substance." This is a Grade C violation.

Violation #2 charges a violation of the condition that Defendant "must not unlawfully possess a controlled substance" and the condition that prohibits commission of another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of marijuana and methamphetamine, on account of his prior drug conviction, constitutes a Class E felony under 21

2

U.S.C. § 844(a).

The Report also states:

on November 10, 2022, Wagers was charged, via Criminal Complaint, in Clay County District Court, Manchester, Kentucky, case number 22-M-478, with Charge 1) Harassment – No Physical Contact (KRS 525.070, a Class B misdemeanor); Charge 2) Harassing Communications (KRS 525.080, a Class B misdemeanor); and Charge 3) Indecent Exposure, First Degree, First Offense (KRS 510.148, a Class B misdemeanor). The charges stem from an allegation that Wagers hacked into a juvenile female's Facebook account and posted pictures of himself on the account, one of which included a picture which showed his genitals and face. The case has been turned over to the Kentucky State Police cyber crimes unit for further investigation. This officer asked Wagers about the allegations, and he denied hacking into anyone's Facebook account.

On February 23, 2023, the UPSO released an Addendum to the Report. According to the Addendum, "On February 20, 2023, Wagers appeared in Clay County District Court and entered a guilty plea to all three (3) aforementioned charges. He was sentenced to 89 days jail, credit for time served." The Addendum charges in Violation #3 a Grade C violation of the condition that prohibits commission of another federal, state, or local crime.

The Court conducted an initial appearance pursuant to Rule 32.1 on February 27, 2023, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 119. At the initial appearance, the United States moved for interim detention; Defendant did not argue for release. *Id*. Based on the heavy § 3143(a) defense burden, the Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on March 10, 2023, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 121. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1 and #2. He admitted he "took two hits off a meth pipe" and

3

smoked marijuana. As for Violation #3, although he admitted pleading guilty to the three misdemeanors, he said he only did so to speed this case along. He denied the actual underlying criminal conduct. The government then moved to dismiss Violation #3, to promote efficiency in the process. Because Defendant admitted the factual basis for Violations #1 and #2, the government established both violations under the standard of 18 U.S.C. § 3583(e).

### III.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to two counts of being a felon in possession of a firearm, 18 U.S.C. § 922(g), a Class C felony. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation for Violation #1 and Grade B violation for Violation #2. Given Defendant's Criminal History Category of VI (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter 7, is 21 to 27 months. On account of the two-year statutory cap, Defendant's effective Guidelines Range is 21 to 24 months.

A court also may re-impose supervised release, following revocation, for a maximum

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given Defendant's prior revocation sentence of 18 months, under 18 U.S.C. § 3583(h), the maximum term of supervised release that can be re-imposed is not more eighteen months, less any term of imprisonment imposed upon revocation.

## IV.

At the final hearing, the government argued for revocation with a top-of-the-Guidelines penalty of 24 months' incarceration. The Court here notes that Defendant is only eligible for eighteen months of post-release supervision, minus any term of imprisonment. So, any revocation sentence of eighteen months or more would devour all of Defendant's potential future supervised release in this case.

According to the government, there are no mitigating factors here. In 2021, Defendant was given a below-Guidelines penalty. Yet he has continued his pattern of illegal drug use. He was given treatment, bit it "didn't take." Given the breach of the Court's trust and the need for deterrence, protection, and avoidance of disparities, the government considered a more severe penalty appropriate.

Although the defense did not address Defendant's troubled past at this year's final revocation hearing, the Court notes the discussion in the 2021 Recommended Disposition at Docket Entry 96 at 4.

According to the defense, the most recent violations were not as bad as those in 2021. Then, he had only been released for a month. He was not cooperative with supervision. Here,

5

however, Defendant had acknowledged his drug problem (although he was reluctant to admit his meth use).  Defendant has now also done eight months of drug treatment.  His life is hard right now, as Defendant's wife is in a nursing home and he has been living with his sister, who is a drug user.  Defendant had been working on obtaining Social Security benefits so he could get his own place.  According to the Defense, a lengthy sentence would force Defendant to start over with obtaining Social Security benefits.

The defense suggested three dispositions.  First, Defendant could be sentenced to twelve months and a day of incarceration (to allow for good-time credits).  Then, there would be some time for additional supervision and treatment upon his release.  Second, Defendant could be given fifteen months of incarceration.  The defense said this would be eighteen months (equal to the amount of post-revocation supervision remaining) minus three months for his state sentence.  This would then leave three months for supervision on release.  Third, the defense suggested an incarceration term of eighteen months on the theory that the incarceration term ought not exceed the available future post-revocation supervision period.  The defense did not provide legal authority in support of this theory.

Defendant addressed the Court.  He said his life had been nothing but rough.  He said he is not an addict.  He said he was about to obtain Social Security benefits and move into his own place.  He attributed his problems to the behavior of his drug-addicted sister and another woman who had been pursuing him.  He said he had gone eight months without using drugs.

## V.

The Court has evaluated the entire record, including the Supervised Release Violation Report (and Addendum, although the government dismissed the Addendum's charge), and

accompanying documents, the argument presented at the final revocation hearing, and the sentencing materials from the underlying Judgment. The Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Neither side argued for treatment in lieu of revocation.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). Here, Defendant violated his conditions again by using methamphetamine and marijuana. At first, he admitted only his marijuana use. The trust breach here is significant because Defendant was revoked two years ago, also for meth use.

The nature and circumstances of Defendant's underlying conviction are very troubling, particularly his violent behavior and his tendency to go armed while intoxicated. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR,

Defendant's neighbors reported him in October 2012 for "shooting a shotgun outside of his residence and making threats." He was not arrested at that time because the shotgun was antique. But he was arrested later, in November 2012, when found intoxicated in a church parking lot. He had a loaded handgun and marijuana in his pocket. He was arrested again while intoxicated in July 2014 and was again found in possession of a handgun and marijuana. Defendant is older now, but he remains someone capable of erratic behavior.

Regarding Defendant's history and characteristics, he poses a clear risk of additional criminal conduct. Defendant has over four decades of committing crimes except (usually) when he is incarcerated. He poses a great risk of returning to criminal (and violent) behavior, especially when he uses meth. Further, each instance of drug use is an additional federal felony. Defendant did succeed for a longer period on supervision this time, but that this is a second revocation must also be taken into account.

Another factor concerns the need for treatment. The parties did not argue for treatment, and Defendant asserted that he is not an addict. This factor does not weigh heavily at this juncture.

The factors of deterring criminal conduct and protecting the public do weigh heavily in this case. As explained above, Defendant has a history of behavior dangerous to himself and others. Given the options available to the Court, the most effective way to protect the public is the maximum incarceration sentence.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. Defendant was given a below-Guidelines penalty last time, and he was warned that leniency was unlikely to recur.

The defense's recommended penalties were below Defendant's Guidelines Range of 21 to 24 months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)). Here, the Court is unable to articulate a justification for varying downward that is consistent with the relevant sentencing factors and policy statements. The breach of trust, Defendant's history and characteristics, the need to protect the public and deter criminal conduct, and the need to avoid unwarranted disparities weigh in favor of a significant penalty. They are not outweighed by the serious challenges Defendant has faced in his life, which the Court took into account in imposing the more lenient sentence in 2021.

The recommended penalty will spell the end of this case. The Court wishes Defendant the best, and hopes he will be able to stay on the law's good side in the future.

## VI.

Based on the foregoing, the Court **RECOMMENDS:**

(1) That, upon his stipulation, Defendant be found guilty of Violations #1 and #2.

(2) That, upon the government's motion, Violation #3 be dismissed.

(3) Revocation with a term of imprisonment of 24 months. Defendant is not eligible for additional supervised release.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As

defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocation, he **SHALL** do so on or before the deadline for filing objections.

This the 13th day of March, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge